IN THE UNITED STATED DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SMJ TOWING, INC., STEVEN JERITSKI, )
DAVID BROWN, and RON COHEN, )
)
             Plaintiffs, )
)   Case No. 05 C 3020
           v. )
)
VILLAGE OF MIDLOTHIAN, ILLINOIS, )
*et al.,* )
)
           Defendants. )

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiffs SMJ Towing, Inc. ("SMJ Towing"), Steven Jeritski, David Brown, and Ron

Cohen filed an eight-count Second Amended Complaint alleging violations of federal and state

law against Defendants Village of Midlothian ("Midlothian"), Vince Schavone, Kerry Sullivan,

Daniel Delaney, Rich Bell, Jr., and Mike Amrein. Before the Court is Defendants' Motion for

Summary Judgment pursuant to Federal Rule of Civil Procedure 56(c). For the reasons

discussed below, the Court grants in part and denies in part Defendants' motion.

## BACKGROUND

### I.     Northern District of Illinois Local Rule 56.1 Statements

The Court derives the background facts from the parties' Northern District of Illinois

Local Rule 56.1 statements. A litigant's failure to respond to a Local Rule 56.1 statement results

in the Court admitting the uncontroverted statements as true. *Raymond v. Ameritech Corp.*, 442

F.3d 600, 608 (7th Cir. 2006). Further, the Court may disregard statements and responses that do

not properly cite to the record. *See Cichon v. Exelon Generation Co., L.L.C.* 401 F.3d 803, 809-

10 (7th Cir. 2005); *Brasic v. Heinemann's Inc.,* 121 F.3d 281, 284 (7th Cir. 1997).

Therefore – as Defendants acknowledge in their reply brief – because Defendants failed to file a response to Plaintiffs' Local Rule 56.1 Statement of Additional Facts, the Court admits Plaintiffs' statements as true.  *See Raymond,* 442 F.3d at 608.  Also, because Plaintiffs failed to cite to the record in responding to Defendants' statements ¶¶ 38, 39, 50, 52, 53, 56, 86-91, 101-106, the Court disregards Plaintiffs' unsubstantiated responses and admits these statements as true.  *See Cichon,* 401 F.3d at 809-10.

## II.     Undisputed Facts

### A.      Parties

SMJ Towing is an Illinois corporation engaged in the business of relocating trespassing vehicles from private property.  (R. 80-1, Def.'s Rule 56.1 Stmt. Facts ¶ 4.)  The Illinois Commerce Commission licenses and regulates commercial vehicle relocators, including SMJ Towing.  (*Id*.)  Plaintiff Steven Jeritski is the owner of SMJ Towing and Plaintiffs David Brown and Ron Cohen are contract tow operators.  (*Id.* ¶ 5.)  Defendant Midlothian is a municipal corporation organized and existing under the laws of the State of Illinois.  (*Id.* ¶ 6.)  Vince Schavone is the Chief of Police for the Midlothian Police Department.  (*Id.*)  Defendants Kerry Sullivan, Daniel Delaney, Rich Bell, and Mike Amrein are Midlothian police officers.  (*Id.*)

### B.      Second Amended Complaint

Plaintiffs allege that certain Midlothian police officers and the Midlothian Police Department violated their constitutional rights in a scheme to prevent them from conducting their lawful relocation activities.  In Counts I, II, and III of the Second Amended Complaint, Plaintiffs allege violations of their Fourth Amendment rights.  In Count IV, Plaintiffs allege that the Midlothian Police Department had a known practice, custom, and policy of harassing and

interfering with SMJ Towing and its drivers.  Plaintiffs also allege a claim of tortious

interference with business relations under Illinois law and the attendant respondeat superior

claim against Midlothian in Counts V and VI.  In Count VII, Plaintiffs bring a claim under

Section 1983 against Midlothian Chief of Police Schavone.  Finally, in Count VIII, Plaintiffs

allege a procedural due process claim that the Court previously dismissed with prejudice.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is proper when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law."  Fed. R. Civ. P 56(c).  A genuine issue of material fact exists only if "the

evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202

(1986).  In determining summary judgment motions, courts construe the facts and all reasonable

inferences in the light most favorable to the non-moving party.  *Id.* at 255.  The party seeking

summary judgment has the burden of establishing the lack of any genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).

"[W]hen a properly supported motion for summary judgment is made, the adverse party 'must

set forth specific facts showing that there is a genuine issue for trial.'"  *Anderson v. Liberty

Lobby*, 477 U.S. at 255 (quoting Fed R. Civ. P. 56(e)).

**ANALYSIS**

**I.      Counts I, II & III – Fourth Amendment Claims**

**A.      Investigatory Stops**

Plaintiffs contend that certain Midlothian police officers violated their Fourth

3

Amendment rights against unreasonable seizures. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "Only government activity that constitutes either a 'search' or a 'seizure' is regulated by the Fourth Amendment." *Christensen v. County of Boone,* 483 F.3d 454, 459 (7th Cir. 2007). "A seizure occurs whenever a police officer 'by means of physical force or show of authority ... in some way restrain[s] the liberty of a citizen.'" *Acevedo v. Canterbury,* 457 F.3d 721, 724 (7th Cir. 2006) (quoting *Terry v. Ohio,* 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). For Fourth Amendment purposes, a person is seized "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); *DeLuna v. City of Rockford,* 447 F.3d 1008, 1014 (7th Cir. 2006).

Beginning with *Terry v. Ohio,* the Supreme Court "has recognized that a law enforcement officer's reasonable suspicion that a person may be involved in criminal activity permits the officer to stop the person for a brief time and take additional steps to investigate further." *Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt County,* 542 U.S. 177, 185, 124 S.Ct. 2451, 159 L.Ed.2d 292 (2004). "While 'reasonable suspicion' is a hard term to define precisely, the Supreme Court has held that it is a commonsense, nontechnical concept that deals with the factual and practical considerations of 'everyday life on which reasonable and prudent [people], not legal technicians, act.'" *United States v. Lawshea,* 461 F.3d 857, 859 (7th Cir. 2006) (quoting *Ornelas v. United States,* 517 U.S. 690, 695, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)). Moreover, although "'reasonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth

Amendment requires at least a minimal level of objective justification for making the stop." *Lawshea*, 461 F.3d at 859 (quoting *Illinois v. Wardlow,* 528 U.S. 119, 123, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000)). "When evaluating the reasonableness of a stop, courts must examine the totality of the circumstances known to the officer at the time the stop is made." *United States v. Johnson,* 383 F.3d 538, 542-43 (7th Cir. 2004). Finally, "an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop" and "the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) (plurality opinion).

### 1. Count I – February 21, 2004 Incident

Viewing the facts in a light most favorable to Plaintiffs, Jeritski and his company, SMJ Towing, had a towing contract with a shopping plaza in Midlothian. (R. 88-1, Pls.' Rule 56.1 Stmt. Add'l Facts ¶ 16; Defs.' Stmt. Facts ¶ 69.) On February 21, 2004, Jeritski had his tow truck lift-mechanism underneath a car that he was towing from the shopping plaza when Officer Sullivan arrived and approached him. (Pls.' Stmt. Facts ¶ 17.) At that time, Officer Sullivan accused Jeritski of striking a vehicle, yet there was no other vehicle present. (*Id.* ¶¶ 17, 18.) Officer Sullivan told Jeritski to "get back in your truck now until I tell you to come out." (Pls.' Ex. 5, Jeritski, S. Dep., at 115.) Officer Sullivan then returned to his car for 20 to 30 minutes. (*Id.* ¶ 19.) Thereafter, the owner of the car arrived and Officer Sullivan told Jeritski to release the towed car to the owner, which Jeritski did. (*Id.* ¶¶ 20, 21.)

Defendants contend that Officer Sullivan's investigatory stop of Jeritski was justified because he had a reasonable suspicion that Jeritski was involved in criminal damage to property by striking another vehicle. Under Illinois' statute for criminal damage to property a "person

commits an illegal act when he ... knowingly damages any property of another without his consent." 720 ILCS 5/21-1(a); *People v. Berrier,* 362 Ill.App.3d 1153, 1170, 299 Ill.Dec. 385, 841 N.E.2d 1117 (2006). Here, Plaintiffs have presented evidence that there were no other vehicles in the area for Jeritski to strike thus creating a genuine issue of material fact whether Officer Sullivan had a reasonable suspicion to stop Jeritski for any criminal activity.

Moreover, *Terry* allows police officers to stop individuals for a brief period of time. *See Florida v. Royer,* 460 U.S. at 500. As the Seventh Circuit instructs, the "the less protracted and intrusive a search is, the less suspicion the police need in order to be authorized by the Fourth Amendment to conduct it, and vice versa." *United States v. Burton,* 441 F.3d 509, 511 (7th Cir. 2006). Thus, whether Officer Sullivan had sufficient justification to detain Jeritski for 20-30 minutes – a fact that Defendants do not contest – is another factual issue for trial.

### 2. Count II – July 2, 2004 Incident

On July 2, 2004, Jeritski and Cohen were towing cars parked at the Tastee Freeze parking lot in Midlothian. (Pls.' Stmt. Facts ¶ 22; Defs.' Stmt. Facts ¶ 48.) At that time, Officer Bell, who was not in uniform and off duty, approached Jeritski and accused him of damaging a towed car. (Pls.' Stmt. Facts ¶ 23; Defs.' Stmt. Facts ¶ 48.) Specifically, Officer Bell observed a SMJ Towing truck use a forklift-type device to lift a parked vehicle and drag it sideways. (Defs.' Stmt. Facts ¶¶ 49, 50.) Officer Bell also observed the vehicle fall off the tow truck. (*Id.* ¶ 52.) Consequently, Officer Bell asked Jeritski and Cohen to wait so he could call on-duty uniformed officers to make a report. (*Id.*) On the other hand, Plaintiffs contend that after Jeritski said he was leaving with the car, Officer Bell threatened to charge Jeritski with theft of the automobile. (Pls.' Stmt. Facts ¶ 25; Ex. 5, Jeritski, S. Dep., at 124.) Defendants nevertheless contend that within a few minutes of Officer Bell's call, two uniformed Midlothian police officers arrived at

6

the scene to gather information.  (*Id.* ¶ 53.)  During that time, the owner of the towed car arrived

and pursuant to the Illinois Vehicle Code, Jeritski and Cohen released the car to the owner.

(Pls.' Stmt. Facts ¶ 28; Defs' Stmt. Facts ¶¶ 54, 63.)  Meanwhile, Plaintiffs contend that the

police officers detained Brown, Cohen, and Jeritski for 30-40 minutes.  (Pls.' Stmt. Facts ¶ 27.)

Finally, there is uncontroverted evidence in the record that Officer Bell stopped the SMJ Towing

truck because he thought Jeritski may have damaged the towed vehicle.  (Defs' Stmt. Facts ¶

56.)

      Defendants assert that Officer Bell had a reasonable suspicion that Jeritski had or was

about to cause criminal damage to property based on Officer Bell's observation that Jeritski

towed the car sideways and that the car fell off of the tow truck.  Indeed, Plaintiffs do not dispute

the fact that Officer Bell stopped Jeritski and the SMJ Towing truck because he thought the

possibility existed that Jeritski may have damaged the car.  (Defs. Stmt. Facts ¶¶ 52, 56.)

      Plaintiffs' allegations that the police detained them for 30-40 minutes instead of the "few

minutes" as set forth by Defendants, however, create a genuine issue of material fact as to the

reasonableness of the scope of the detention.  *See Florida v. Royer,* 460 U.S. at 500 ("an

investigative detention must be temporary and last no longer than is necessary to effectuate the

purpose of the stop"); *see also Cady v. Sheahan,* 467 F.3d 1057, 1063 (7th Cir. 2006) (duration of

stop may exceed limited scope set forth in *Terry*).  Therefore, there is a genuine issue of fact

whether Officer Bell's stop was objectively reasonable.  *See United States v. Stewart,* 388 F.3d

1079, 1084 (7th Cir. 2004) ("[T]he crux of our inquiry is whether the nature of the restraint

imposed meets the Fourth Amendment's standard of objective reasonableness.") (citation

omitted).

## B.      Count III – Brown's Arrest

In Count III of the Second Amendment Complaint, Plaintiffs allege that Officer Delaney and Officer Amrien violated Brown's Fourth Amendment right to be free from unreasonable seizures by falsely arresting Brown. *See* 42 U.S.C. § 1983. To survive summary judgment, "[P]laintiffs first must present evidence which would allow a reasonable fact finder to determine that they were arrested without probable cause." *Washington v. Haupert,* 481 F.3d 543, 547 (7th Cir. 2007); *see also Pourghoraishi v. Flying J, Inc.,* 449 F.3d 751, 762 (7th Cir. 2006) ("actual existence of ***any*** probable cause to arrest precludes a § 1983 suit for false arrest") (emphasis in original). Thus, the Court turns to the legal bases for Brown's arrest.

"[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates,* 462 U.S. 213, 243 n.13, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). To have probable cause for an arrest, "law enforcement agents must reasonably believe, in light of the facts and circumstances within their knowledge at the time of the arrest, that the suspect had committed or was committing an offense." *Washington,* 481 F.3d at 547; *see also Gates,* 462 U.S. at 232 (probable cause "turn[s] on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules"). "Whether an officer has probable cause to arrest depends on the requirements of the applicable state criminal law." *Pourghoraishi,* 449 F.3d at 761.

The Illinois statute for resisting or obstructing a police officer states that a "person who knowingly resists or obstructs the performance by one known to the person to be a peace officer or correctional institution employee of any authorized act within his official capacity commits a Class A misdemeanor." 720 ILCS 5/31-1(a). Under Illinois law, an arrestee's resistance or obstruction must be physical – a mere argument or verbal confrontation with a police officer is

not enough.  *See Payne v. Pauley,* 337 F.3d 767, 776 (7th Cir. 2003) (citing *People v. Raby,* 40

Ill.2d 392, 240 N.E.2d 595, 599 (1968)).  Specifically, the terms "obstructs" and "resists" in the

statute "proscribe only some physical act which imposes an obstacle which may impede, hinder,

interrupt, prevent or delay the performance of the officer's duties, such as going limp, forcefully

resisting arrest or physically aiding a third party to avoid arrest."  *People v. Synnott,* 349

Ill.App.3d 223, 225, 284 Ill.Dec. 941, 811 N.E.2d 236 (2004) (citation omitted).

Illinois law also provides that it is unlawful for any commercial vehicle relocator "to

remove a vehicle when the owner or operator of the vehicle is present or arrives at the vehicle

location at any time prior to the completion of removal, and is willing and able to remove the

vehicle immediately."  625 ILCS 5/18a-300(9).  Under this section of the Illinois Vehicle Code,

if the owner appears before the vehicle is completely removed from private property, the vehicle

relocator is required to stop the tow.  (Defs.' Stmt. Facts ¶ 9.)

Here, the facts reveal that on February 14, 2005, Brown was operating a tow truck with

Joel Jeritski – who is not a party to this lawsuit – at a private apartment building in Midlothian

where SMJ Towing had a contract to tow cars parked without authorization.  (Pls.' Stmt. Facts ¶

31.)  On that date, Brown and Jeritski towed a car which had been illegally parked without a

permit sticker.  (*Id.* ¶ 32.)  Thereafter, Brown and Jeritski proceeded out of the parking lot and

drove off the property.  (*Id.* ¶ 33.)  Jeritski then noticed a woman running toward the towed car

who eventually threw herself onto the hood of the car.  (*Id.* ¶ 34.)  Jeritski called 911 for police

protection.  (*Id.*)

Officer Delaney subsequently arrived on the scene.  (Def.'s Stmt. Facts ¶ 12.)

Undisputed evidence reveals that the woman who had jumped on the car lied to the police

officers by telling them she was on the hood of her car while Jeritski and Brown lifted her car

onto the tow truck. (Pls.' Stmt. Facts ¶ 36.) Brown then asked the police officers to examine the original site of the tow on the apartment building's property so the officers could observe a "lift mark" on the concrete where the tow truck had lifted the car, but the police officers refused to investigate. (*Id.* ¶ 37.) The police officers subsequently ordered Brown to release the car to the woman and stated that if Brown refused they would arrest him for obstructing a police officer. (*Id.* ¶ 39; Defs.' Stmt. Facts ¶ 30.) After Brown refused, Officer Delaney arrested him and placed him in handcuffs. (Pls.' Stmt. Facts ¶ 40; Defs.' Stmt. Facts ¶ 30.) Officer Delaney then put Brown in the back of Officer Amrein's squad car and Officer Amrein transported Brown to the Midlothian Police Department. (Defs.' Stmt. Facts ¶¶ 31, 38.)

Viewing the facts in a light most favorable to Plaintiffs, they have submitted evidence creating a genuine issue of material fact whether Officer Delaney had probable cause to arrest Brown for obstructing a police officer or for unlawfully removing a vehicle. More specifically, there is no evidence in the record that Brown used physical force when he allegedly obstructed Officer Delaney's performance and under well-settled Illinois law, an arrestee's obstruction must be physical. *See Pauley,* 337 F.3d at 776. Whether Officer Delaney reasonably believed – in light of the facts and circumstances within his knowledge at the time of the arrest – that Brown had committed or was committing the offense of obstructing a police officer is a question of fact for trial. *See id.* at 776-77.

Whether Officer Delaney had probable cause to arrest Brown for unlawfully removing a vehicle under the Illinois Vehicle Law is also a question of fact for trial. Viewing the evidence in Plaintiffs' favor, they have presented evidence that Brown had completed the removal of the vehicle and was off the apartment building property before the owner arrived at the vehicle's location and jumped on the hood of the car. As such, Plaintiffs have set forth sufficient evidence

creating a genuine issue of material fact that Officer Delaney did not have probable cause to arrest Brown pursuant to the Illinois Vehicle Code, 625 ILCS 5/18a-300(9).

Finally, Defendants argue: "And apart from the above, as transporting officer, Amrein is not liable for the detention." Defendants cite *Morfin v. City of East Chicago*, 349 F.3d 989, 1000-01 (7th Cir. 2003) in support of this argument. From Defendants' cursory statement and citation, it appears they are arguing that because Officer Amrein was not personally involved in the decision to arrest Brown, he cannot be liable for Brown's false arrest claim. *See Hildebrandt v. Illinois Dep't of Natural Res.,* 347 F.3d 1014, 1039 (7th Cir. 2003) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation.") (citation omitted). Indeed, similar to the facts in *Morfin,* Plaintiffs have failed to set forth any evidence that implicates Officer Amrein in the alleged constitutional violation. *Id.* at 1000. Instead, evidence in the record reveals that it was Officer Delaney's decision alone to arrest Brown. (Defs.' Stmt. Facts ¶ 39.) As such, because there are no facts in the record that Officer Amrein was personally involved in the decision to arrest Brown, the Court dismisses Officer Amrein from this lawsuit.

## C.    Qualified Immunity

Defendant Officers maintain that the doctrine of qualified immunity protects them from Plaintiffs' Fourth Amendment claims. In general, qualified immunity shields government officers performing discretionary functions from civil litigation. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). When determining whether qualified immunity shields a public official from a Section 1983 action, the Court undertakes a two-part inquiry. *Mannoia v. Farrow,* 476 F.3d 453, 457 (7th Cir. 2007) (citing *Saucier v. Katz,* 533 U.S.

11

194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)).  The Court's first inquiry is whether the

facts, viewed in the light most favorable to Plaintiffs, show that Defendant Officers violated a

constitutional right.  *See id.* (citing *Saucier,* 533 U.S. at 201).  If the facts comprise a

constitutional violation, the Court's second inquiry is whether the constitutional right "was

firmly established at the time of the alleged injury, such that a reasonable officer would

understand that his actions are in violation of that right."  *Mannoia,* 476 F.3d at 457 (citing

*Saucier*, 533 U.S. at 201).

      Construing Plaintiffs' submissions in their favor, constitutional violations "could be

made out" concerning their Fourth Amendment claims.  *See Saucier,* 533 U.S. at 201; *Alexander*

*v. City of Milwaukee,* 474 F.3d 437, 444 (7th Cir. 2007).  The Court turns to the next step in its

inquiry, namely, whether the constitutional right was clearly established at the time of the

alleged violations.  Under the second inquiry, it is Plaintiffs' burden to establish that their Fourth

Amendment rights were "clearly established."  *Wernsing v. Thompson,* 423 F.3d 732, 742 (7th

Cir. 2005).  To do so, Plaintiffs "must demonstrate either that a court has upheld the purported

right in a case factually similar to the one under review, or that the alleged misconduct

constituted an obvious violation of a constitutional right."  *Id*.  "The relevant, dispositive inquiry

in determining whether a right is clearly established is whether it would be clear to a reasonable

officer that his conduct was unlawful in the situation he confronted."  *Saucier,* 533 U.S. at 202.

      The Court first turns to Officer Delaney's February 14, 2005 arrest of Brown.  As the

Seventh Circuit explained after concluding that police officers did not have probable cause to

arrest a 14 year-old in September 1997, "[t]he probable cause standard – requiring that an

officer's knowledge of the facts be sufficient to warrant a prudent person in believing that the

suspect had committed or was committing a crime – was clearly established at the time of this

incident." *Marshall ex rel. Gossens v. Teske,* 284 F.3d 765, 772 (7th Cir. 2002). Here, however, there are genuine issues of material fact concerning what Officer Delaney knew at the time of Brown's 2005 arrest, including whether Brown's alleged obstruction was physical and whether Brown lawfully removed the vehicle from the private property before the owner jumped on the hood of her car. Under these circumstances, Defendants' contention that Officer Delaney had "arguable probable cause" is without merit. *See Pourghoraishi,* 449 F.3d at 764 (due to critical disputes over what facts were apparent to officer at time of arrest, court could not determine if qualified immunity shielded officer); *Morfin,* 349 F.3d at 1000 n.13 (because officer's knowledge at time of arrest was unclear, genuine issue of fact existed and court could not determine qualified immunity). As such, the Court cannot determine whether Officer Delaney is shielded by qualified immunity at this juncture.

Defendants make the same argument concerning Officer Sullivan's *Terry* stop of Jeritski on February 21, 2004 and Officer Bell's stop of Jeritski on July 2, 2004. Although it was clearly established at the time of these investigatory stops that police officers must have a reasonable suspicion that a person may be involved in criminal activity in order to stop the person for a brief time to investigate, *see Hiibel,* 542 U.S. at 185, because there are genuine issues of material fact concerning what Officers Sullivan and Bell knew at the time of the *Terry* stops, the Court cannot decide the question of qualified immunity at this time.

## III.     Count IV – Monell Claim

### A.       Official Capacity Claim against Chief Schavone

Plaintiffs allege that Midlothian's Chief of Police Vince Schavone is liable under Section 1983 because he initiated the custom, practice, or policy of harassing SMJ Towing and its drivers. Any claim against Chief Schavone in his official capacity is a claim against Midlothian

as a governmental unit. *See Kentucky v. Graham*, 473 U.S. 159, 165-66, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114, 121 (1985) (citing *Monell v. Dept. of Soc. Servs. of New York*, 436 U.S. 658, 690, n.55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). In other words, official capacity suits brought against individuals are "another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham,* 473 U.S. at 165 (citation omitted). Accordingly, any claim against Schavone in his official capacity is redundant to Plaintiffs' claim against Midlothian, and thus the Court dismisses Chief Schavone in his official capacity from this lawsuit. Before the Court discusses Plaintiffs' claims against Chief Schavone in his individual capacity, the Court turns to their *Monell* claim against Midlothian, including Plaintiffs' argument that Chief Schavone had final policymaking authority that caused or ratified their alleged constitutional injuries. *See Pembaur v. City of Cincinnati,* 475 U.S. 469, 483, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986).

### B.  Monell Claim Against Midlothian

Under Section 1983, a government agency cannot be liable under the theory of respondeat superior. *Monell,* 436 U.S. at 691 ("municipality cannot be held liable **solely** because it employs a tortfeasor") (emphasis in original). In other words, "units of local government are responsible only for their policies rather than misconduct by their workers." *Fairley v. Fermaint*, 482 F.3d 897, 904 (7ᵗʰ Cir. 2007). Thus, to establish liability against Midlothian, Plaintiffs must show that (1) they suffered a deprivation of a federal right, (2) as a result of either an express municipal policy, widespread custom, or deliberate act of a decision-maker with final policy-making authority, that (3) proximately caused their constitutional injuries. *Ovadal v. City of Madison,* 416 F.3d 531, 535 (7ᵗʰ Cir. 2005). Unconstitutional policies or customs include: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread

practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that a person with final policymaking authority caused or ratified the constitutional injury. *Phelan v. Cook County,* 463 F.3d 773, 789 (7th Cir. 2006) (citation and quotations omitted); *Simmons v. Chicago Bd. of Educ.,* 289 F.3d 488, 494 (7th Cir. 2002) ("One way or another, the policy must be shown to be that of the municipality itself.")

### 1. Final Policymaking Authority

Plaintiffs argue that Chief Schavone has final policymaking authority, and therefore, Midlothian is liable for Chief Schavone's actions under the third *Monell* scenario. To have final policymaking authority, an official must have the responsibility for making law or setting policy, that is, the official must have the authority to adopt rules for the conduct of the governmental entity. *Killinger v. Johnson,* 389 F.3d 765, 771 (7th Cir. 2004); *Rasche v. Village of Beecher*, 336 F.3d 588, 599 (7th Cir. 2003). In determining whether an individual is a final policymaker, the Court looks to state and local law, as well as custom having the force of law. *Killinger,* 389 F.3d at 771-72.

Instead of relying on state law, local law, or custom having the force of law in support of their final policymaking argument, Plaintiffs rely on Chief Schavone's letter to Jeritski after the July 2, 2004, incident at the Tastee Freeze. (Pls.' Stmt. Facts ¶ 30; Pls.' Ex. 7, July 14, 2004, Schavone Letter.) In his letter, Chief Schavone requested that SMJ Towing verify its clients in Midlothian and stated that it "would be prudent for SMJ Towing Inc. to cease and desist from any operation of business (towing vehicles) in Midlothian until this matter can be resolved satisfactorily in accordance with the Village of Midlothian Ordinance 5-4-34 and the Illinois Vehicle Code 625 ILCS 5/4-203f(5)(a)." (*Id.*) The record reveals that Officer Schavone wrote

this letter because he was concerned that SMJ Towing did not have a contract to tow cars with the Tastee Freeze because the Tastee Freeze had been closed for business since Chief Schavone had become the chief of police. (Defs.' Stmt. Facts ¶¶ 102, 103.)

Although Schavone's letter reveals that he told Jeritski it would be prudent for SMJ Towing to cease its towing operations in Midlothian "until this matter can be resolved satisfactorily in accordance with the Village of Midlothian Ordinance 5-4-34 and the Illinois Vehicle Code 625 ILCS 5/4-203f(5)(a)," Chief Schavone did not legislate or enact the Midlothian Ordinance or the Illinois Vehicle Code as required to establish that he has final policymaking authority. *See Rasche*, 336 F.3d at 599. Instead, Chief Schavone had the authority to implement the laws of the State of Illinois and Midlothian. Under established Seventh Circuit precedent, an official's authority to implement pre-existing rules is not authority to set policy. *See Killinger,* 389 F.3d at 771 (listing cases). Accordingly, Plaintiffs' *Monell* claim based on Chief Schavone's final policymaking authority fails.

### 2. Widespread Practice

Plaintiffs also contend that Midlothian has an unlawful widespread practice that involved a "two-year campaign of illegal detentions, arrest and harassment suffered by the Plaintiffs." (R. 91-1, Pls.' Summ. J. Resp., at 13.) Because Plaintiffs bear the burden of proving their alleged widespread practice at trial, they must set forth specific facts showing that there is a genuine issue of material fact regarding the existence of a widespread policy or practice. *See Palmer v. Marion County*, 327 F.3d 588, 595 (7th Cir. 2003) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Under the *Monell* widespread practice theory, Plaintiffs must establish an unconstitutional pattern of conduct that gives rise to the inference that an unconstitutional custom or practice exists. *See Calhoun v. Ramsey,* 408 F.3d 375, 380

(7th Cir. 2005).  As the *Calhoun* court explained

> what is needed is evidence that there is a true municipal policy at issue, not a random event.  If the same problem has arisen many times and the municipality has acquiesced in the outcome, it is possible (though not necessary) to infer that there is a policy at work, not the kind of isolated incident that [*Board of the County Comm'rs of Bryan County v. Brown,* 520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)] held cannot support municipal liability.

*Id.*

The prototypical widespread practice argument focuses on the application of the alleged unconstitutional policy to different individuals or groups of individuals – not just actions directed at one person or one group.  *See Phelan,* 463 F.3d at 789; *see, e.g.*, *Gable v. City of Chicago,* 296 F.3d 531, 537 (7th Cir. 2002).  Nevertheless, in *Phelan*, the Seventh Circuit considered a plaintiff's claim of a widespread practice of sexual harassment in which she only presented evidence of conduct directed at her.  *See Phelan,* 463 F.3d at 789.  In doing so, the Seventh Circuit explained that the word "policy" means a course of action that is chosen from various alternatives.  *Id.* at 790.  The *Phelan* court illustrated the term "policy" by listing two cases in which the court concluded that the alleged widespread practice at issue did not evince a municipal policy, including

> where the plaintiff introduced evidence that on three separate occasions prison guards improperly sprayed inmates with pepper spray. *See Estate of Moreland v. Dieter,* 395 F.3d 747, 760 (7th Cir. 2005) ("these incidents do not amount to 'a widespread practice' that is 'permanent and well settled' so as to constitute an unconstitutional custom or policy about which the sheriff was deliberately indifferent").  Similarly, we rejected a plaintiff's attempt to demonstrate a widespread practice amounting to a policy where the plaintiff introduced evidence of two situations in which the prison had placed black inmates in "gladiator cell blocks" that posed a threat to their safety.  *See Palmer v. Marion County,* 327 F.3d 588, 595 (7th Cir. 2003).

*Id.* at 790.  As such, the *Phelan* court instructed that "[i]t is not enough to demonstrate that policymakers could, or even should, have been aware of the unlawful activity because it

occurred more than once.  The plaintiff must introduce evidence demonstrating that the unlawful practice was so pervasive that acquiescence on the part of policymakers was apparent and amounted to a policy decision."  *Id.*

Here, Plaintiffs assert that the encounters they had with certain Midlothian police officers support their widespread practice claim.  Specifically, Plaintiffs contend that they have "woven these separate incidents together into a cognizable policy," by which they "were illegally detained, unlawfully arrested, and deprived of their economic livelihoods."  (Pls.' Summ. J. Resp., at 13.)  The incidences to which Plaintiffs refer include the two investigatory stops and Brown's arrest, as well as Chief Schavone's July 2004 letter to Jeritski.  Plaintiffs also rely on a January 25, 2004, incident concerning their former procedural due process claim that the Court dismissed earlier in the proceedings.[1]

First, Plaintiffs fail to explain how they have woven these instances together into a cognizable, unlawful policy.  More importantly, Plaintiffs have failed to "introduce evidence demonstrating that the unlawful practice was so pervasive that acquiescence on the part of policymakers was apparent and amounted to a policy decision."  *Phelan*, 463 F.3d at 790.  In other words, Plaintiffs did not present evidence showing Midlothian's culpability, namely, that these incidences were so pervasive and widespread that Midlothian policymakers adopted the police officers' alleged misconduct as policy.  *See Gable*, 296 F.3d at 539.  Therefore, viewing

---

[1]  On January 25, 2004, three men, who identified themselves as gang members, approached Cohen and asked him if he had towed their car after which they threatened Cohen and his passenger, Joel Jeritski.  (Pls.' Stmt. Facts  ¶¶ 1-5.)  Officers Sullivan and Kneeland then arrived and investigated the situation.  (*Id.* ¶ 6; Defs.' Stmt. Facts ¶ 89.)  Officer Kneeland concluded that there was no probable cause to arrest the alleged assailants.  (Defs.' Stmt. Facts ¶ 89.)  The police officers then let the three men leave the scene.  (Pls.' Stmt. Facts ¶ 8.)  Steve Jeritski later arrived and the officers issued Jeritski two traffic citations for speeding and a faulty tail light.  (*Id.* ¶ 13.)

the record in a light most favorable to Plaintiffs, they have failed to present evidence creating a genuine issue of material fact concerning their widespread practice claim.

## IV.     Count VII – Individual Capacity Claim Against Chief Schavone

As discussed, Plaintiffs' Section 1983 action against Chief Schavone in his official capacity is a claim against Midlothian. Thus, the Court turns to whether Plaintiffs have set forth sufficient evidence creating a genuine issue of material fact regarding Chief Schavone's liability based on his individual capacity. For an individual to be liable under Section 1983, he must have participated directly in the constitutional violation. *Palmer,* 327 F.3d at 594. Put another way, because a Section 1983 claim is against a "person," a plaintiff must establish that the defendant was personally responsible for the alleged constitutional deprivation. *Johnson v. Snyder,* 444 F.3d 579, 583 (7th Cir. 2006). Supervisors satisfy the personal responsibility requirement if the conduct causing the constitutional violation occurred at the supervisor's direction or with his knowledge and consent. *Hildebrandt,* 347 F.3d at 1039; *see also Johnson,* 444 F.3d at 583-84 (to be personally responsible, a supervisor "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye.") (citation omitted). "In short, some causal connection or affirmative link between the action complained about and the official sued is necessary for Section 1983 recovery." *Hildebrandt,* 347 F.3d at 1039.

Based on Chief Schavone's affidavit, Plaintiffs maintain that Chief Schavone had personal involvement in the alleged constitutional deprivations because he had knowledge of the incidents at issue and nevertheless dismissed Plaintiffs' meritorious complaints with "a perfunctory investigation." Plaintiffs thus contend Chief Schavone knew of Defendant Officers' conduct and "condoned it or turned a blind eye for fear of what he might see." (Pls.' Summ. J. Resp., at 13.)

In his affidavit, Chief Schavone stated that after the January 25, 2004, incident in which Cohen and Joel Jeritski complained of being assaulted by gang members, he reviewed and investigated Plaintiffs' complaints. (Defs.' Stmt. Facts ¶¶ 83, 86-90; Schavone Aff. ¶¶ 5-15.) After his investigation, Chief Schavone advised Plaintiffs that misconduct occurred because Officer Kneeland failed to write down the identities of the three individuals. (Defs.' Stmt. Facts ¶ 91; Schavone Aff. ¶ 16.) Chief Schavone then explained to Plaintiffs that he disciplined Officer Kneeland for his actions. (Defs.' Stmt. Facts ¶ 93; Schavone Aff. ¶ 16.) Also, in his affidavit, Chief Schavone averred that he was aware of the other incidents at issue, but concluded that the police officers had acted appropriately under the circumstances. (Defs.' Stmt. Facts ¶¶ 101, 105, 106; Schavone Aff. ¶¶ 19-34.) Indeed, whether the *Terry* stops and Brown's arrest were unlawful are subject to reasonable dispute.

Although it is undisputed that Chief Schavone was aware of the incidents, viewing the evidence in a light most favorable to Plaintiffs, their argument that Chief Schavone condoned unlawful conduct is not supported by his affidavit or the record as a whole. The Court thus dismisses Chief Schavone in his individual capacity from this lawsuit.

## V.      Count V – Tortious Interference with Business Relations

Finally, the Court turns to Plaintiffs' claim in Count V of the Second Amended Complaint in which Plaintiffs allege that Defendants tortiously interfered with their business or contractual relations. To establish a claim for tortious interference with contractual rights under Illinois law, Plaintiffs must show (1) the existence of a contract, (2) Defendants' awareness of the contract, (3) Defendants' intentional inducement of a contract breach, (4) an actual breach of contract, and (5) damages. *See Cody v. Harris,* 409 F.3d 853, 859 (7th Cir. 2005) (quoting *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.,* 131 Ill.2d 145, 137 Ill.Dec. 19, 545 N.E.2d

672, 676 (1989)).  "A necessary prerequisite to the maintenance of an action for tortious interference with contract is a defendant's intentional and unjustified inducement of a breach of contract."  *Illinois Bell Telephone Co. v. Plote, Inc.,* 334 Ill.App.3d 796, 806, 268 Ill.Dec. 581, 778 N.E.2d 1203 (2002).

Defendants first contend that Plaintiffs' tortious interference claim based on Defendants' conduct prior to May 19, 2004, is time-barred by the one-year statute of limitations pursuant to the Illinois Local Government and Governmental Employees Tort Immunity Act, 745 ILCS 10/1-101 *et seq.*  Specifically, Section 8-101 of the Illinois Tort Immunity Act provides for a one year statute of limitations for personal injuries caused by a local public entity or its employees acting within the scope of their employment.  *Sperandeo v. Zavitz,* 365 Ill.App.3d 691, 693, 302 Ill.Dec. 957, 850 N.E.2d 394 (2006); *see also Luciano v. Waubonsee Cmty. Coll.,* 245 Ill.App.3d 1077, 1086, 185 Ill.Dec. 463, 614 N.E.2d 904 (1993) ("allegations of wilful and wanton conduct do not deprive a local public entity and its employees of the benefit of the shorter limitations period provided in section 8-101.").

Plaintiffs do not respond to Defendants' statute of limitations defense.  In any event, because Plaintiffs filed this action on May 20, 2005, any conduct occurring before May 20, 2004 cannot form the basis for Plaintiffs' tortious interference of contract claim under the Illinois Tort Immunity Act.  The Court turns to Defendants' conduct after May 19, 2004 – specifically the July 2, 2004 incident at the Tastee Freeze– to determine if Plaintiffs have set forth sufficient evidence to create a genuine issue of fact for trial.[2]

---

[2] Although Plaintiffs contend that the February 14, 2005, incident where Officer Delaney arrested Brown also supports their tortious interference claim, Plaintiffs do not point to facts supporting their argument.  Indeed, there is no evidence in the record that Officer Delaney was aware of a contract between Defendants and the property owner.  *See Cody v. Harris,* 409 F.3d

To recap, on July 2, 2004, Jeritski and Cohen were towing cars parked at the Tastee Freeze parking lot. (Pls.' Stmt. Facts ¶ 22.) At that time, Officer Bell approached Jeritski and accused him of damaging a towed car. (*Id*. ¶ 23; Defs.' Stmt. Facts ¶ 48.) More specifically, after Officer Bell observed a SMJ Towing truck drag a car sideways, he stopped Plaintiffs from towing the car. (Defs.' Stmt. Facts ¶¶ 49, 52.) Jeritski then informed Officer Bell that he was towing the car pursuant to a legal contract. (Pls.' Stmt. Facts ¶ 24.) Plaintiffs eventually released the car when the owner arrived approximately thirty minutes later. (*Id*. ¶¶ 27, 28; Defs.' Stmt. Facts ¶ 54.)

Based on these facts, Plaintiffs contend that they have presented sufficient evidence that they had a contract with the property owner, Officer Bell was aware of the contract, Officer Bell intentionally induced a contract breach, Plaintiffs breached their contract with the property owner by not towing the vehicle, and Plaintiffs suffered damages. On the other hand, Defendants contend that because Officer Bell had a legal justification to stop Jeritski from towing the car, more specifically, that Officer Bell had a reasonable suspicion that Jeritski may be involved in criminal damage to property, Plaintiffs' tortious interference claim must fail. *See Illinois Bell Telephone Co.,* 334 Ill.App.3d at 806 (tortious interference must be intentional and unjustified). Whether Officer Bell had a reasonable suspicion to stop Jeritski is an issue of fact for trial, thus Defendants' argument based on Officer Bell's legal justification fails at this time. Therefore, the Court denies Defendants' summary judgment motion as to Count V and the attendant respondeat superior claim against Midlothian in Count VI.

---

853, 859 (7th Cir. 2005). Therefore, Plaintiffs' tortious interference claim based on the February 14, 2005, incident fails.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court grants in part and denies in part Defendants' Motion

for Summary Judgment.

Dated:  May 21, 2007

**ENTERED**

**AMY J. ST. EVE**
**United States District Court Judge**